Bruce A. OSTERTAG, an infant, by Robert Ostertag, his guardian ad litem, and Robert Ostertag, individually, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 12455.

United States District Court, E. D. New York.

July 13, 1954.

272

Kamen & Ostertag, New York City, for plaintiffs, Sol S. Ostertag, New York City, of counsel.

Leonard P. Moore, U. S. Atty. for the Eastern Dist. of New York, Brooklyn, N. Y., for defendant, Arthur D. Hickerson, Brooklyn, N. Y., of counsel.

BYERS, District Judge.

This is a suit under the Federal Tort Claims Act in which recovery is sought by the infant plaintiff for injuries suffered by him on December 13, 1951 at about 10:50 a. m.; and by his father for medical and surgical expenses arising in connection therewith.

There is no dispute that the infant plaintiff was standing near the curb in front of the premises No. 1568 East 9th Street, Brooklyn, at the time in question and fell into the gutter either between the front and rear wheels of a United States mail truck, or in front of the front wheel, causing the latter to injure his right foot.

The truck was driven by William Strulowitz, whose experience and competence to discharge his duties were not brought into question.

The infant plaintiff was then twenty months of age, namely, one year and eight months old, and had left his mother who was standing on the sidewalk at a distance of fifty to sixty feet as estimated, from the place where the mail truck was at rest. Why she permitted so small a child to be at that distance from her does not appear in the testimony.

It is necessary to decide whether Strulowitz knew that this small child was standing with his right hand resting on the right front fender of the truck just before the happening or, if not, whether he was chargeable with that knowledge.

The only witnesses called for the plaintiff were the child's mother, Lita Ostertag, and the father who testified to the medical and surgical expenses involved; and the witnesses for the said defendant were the driver Strulowitz, and Alfred J. Morlock, the route supervisor employed by the United States Post Office, who arrived at the plaintiff's home pursuant to a telephone call, some forty minutes or so after the accident.

Mrs. Ostertag testified that she saw the mail truck parked in front of No. 1568, having left her home which was then No. 1580 East 9th Street but a few minutes before the happening. She said that she knew the driver and she saw him seated behind the wheel looking at papers and that he had made a postal delivery at No. 1568; that she observed him walk toward the truck and then the child approached it after the driver had taken his seat; that the child was baby-talking to the driver for a brief time and then the driver went back inside the truck where he remained for a few minutes, and later resumed his seat behind the wheel; that he looked to his left and then started the truck, and the child fell as above stated as the result of that movement.

That she picked the child up from the space between the truck and the curb

and observed that his right shoe was flattened and removed the same, and that the driver helped her to take the child into her own home. She said that there were tire marks on the child's forehead; she called her own physician, Dr. Karp, who examined the child but said that he was in too much shock to tell the doctor anything, and he told her to consult Dr. Max Adelman, an orthopedic surgeon.

Under cross-examination, she said that the child was talking to the driver Strulowitz "say five minutes"; that when she saw the child fall she screamed, which attracted the attention of the driver who stopped promptly; that she did not hear the driver say anything to the child but she saw him pat the child on its head before going to the back of the truck.

Strulowitz testified that he made the delivery at No. 1568, having stopped in front of that address at a distance of seven to eight inches from the curb; that he saw nobody on the street as he started to return to the truck and that he went at once inside to sort packages for further deliveries and then returned to the driver's seat and looked toward both sides of the street before starting the truck and saw no one, and therefore put it in motion.

Under cross-examination, he stated that he had left the motor running as he made the delivery above referred to, but the car was not in gear; that he did not see anybody when he returned from that delivery and he did not close the door on the right side of the driver's compartment; that the truck was stopped for about seven minutes, of which two were consumed in making the delivery; that he did not see Mrs. Ostertag until she was running toward him and screaming; then he stopped the forward motion of the truck and saw the child in the gutter almost under the rear wheel; that he did not know that the child was alongside the truck at any time up to finding him in the position stated.

It is necessary to choose between these two versions of the happening, and after hearing and observing the witnesses, the choice becomes apparent:

In the first place, Strulowitz was not a man who would have started the truck had he known that the child was in the position alongside the front fender which his mother describes; the height of that fender above the sidewalk at the curb is found to have been thirty inches, for the testimony so establishes, and this twenty months old child is not shown to have been tall enough for his head to have appeared above the fender at the right front wheel so as to be observable to the driver when he looked toward his right before starting the truck.

The testimony of Mrs. Ostertag, that she saw the driver pat her son upon his head is not accepted; it was clearly an after-thought for it was not mentioned by her in her deposition taken before trial. She did say, as quoted in the plaintiff's brief:

"The child went to the right door of the truck and the operator became friendly with and attentive to the child."

If the driver had made the gesture which she attributes to him in her cross-examination at the trial, I am satisfied that she would have so stated at the time her deposition was taken.

The result of a reconsideration of the testimony, including the demeanor of the witnesses, leads to the conclusion that neither plaintiff has sustained his burden of proof.

A decision in the defendant's favor is the less reluctant than it would be if the infant plaintiff had sustained any considerable injury. The testimony of Dr. Adelman is convincing that no serious or permanent disability will result to the infant plaintiff because of the happening above related.

Judgment is ordered for the defendant on the merits. Findings in accordance with the foregoing are filed herewith.